AARON HODGEDEN *v.* GUSTAVUS A. HUBBARD AND WILLIAM AYRES.

If a person purchase personal property, such as a stove, by means of false and fraudulent representations as to his solvency and means of paying therefor, he acquires no right, either of property, or possession, and the vendor will be justified in pursuing him and retaking the property, using no more force than is necessary, to effect this object.

And if the vendor retake the property by force, and use no more force than is necessary, no action will lie against him, at the suit of the purchaser, for assault and battery.

And if the purchaser resist the retaking the property by the vendor, and draw his knife, he becomes the aggressor, and the vendor will be justified in using such additional force, as will be necessary to accomplish the obtaining the property.

TRESPASS for assault and battery, and for taking and carrying away a stove, the property of the plaintiff. Plea the general issue, with notice of special matter of defence, and trial by jury,—REDFIELD, J., presiding.

On trial the plaintiff gave evidence, tending to prove, that, on the nineteenth day of September, 1842, he purchased at the Tyson ware house, in Montpelier, a stove, and gave his promissory note therefor, payable in six months; that the agent, who had charge of the warehouse, was absent at the times, and the sale was made by the defendant Hubbard, who was clerk for the agent, as was also the defendant Ayres; that on the same day, and soon after the sale, the defendants learned, that the plaintiff was irresponsible as to property, and started in pursuit of him, and overtook him about two miles from Montpelier and took the stove from him by force; but it did not appear, how much force was used, or its character; but it did appear, that, in the attempt to dispossess the plaintiff of the stove, he drew his knife, and that he was then forcibly held by one of the defendants, while the other took possession of the stove; and the testimony tended to prove, that the resistance of the plaintiff was such, that the defendants used violence and applied force to his person with great rudeness and outrage.

The defendants then gave evidence, tending to prove that the

purchase of the stove by the plaintiff was effected by means of his false and fraudulent representations as to his ability to pay, and as to the amount of his property ; that, among other things, the plaintiff represented, that he owned a farm in Cabot and considerable stock upon it, that he owned the team that he then had with him, and that he carried on a large business manufacturing butter firkins, &c.; that it was only by means of these representations, and others of like character, that Hubbard was induced to sell the stove to the plaintiff on credit ; that soon after the delivery of the stove, on the same day, Hubbard learned, upon inquiry, from a person whom he saw from Cabot, that the plaintiff was entirely irresponsible, and that his representations as to his property were wholly false ; and that the defendants immediately followed the plaintiff, and took the stove from him, and told him that he could have the note by calling for it.

The defendants requested the court to instruct the jury, that, if they should find, that the purchase of the stove on credit was effected only by means of the false and fraudulent representations of the plaintiff, as above specified, the title to the stove did not vest in the plaintiff, and the defendants, as servants of the agent of the Tyson warehouse, were justified in pursuing the plaintiff and taking the stove from him by force, and that, if they used no more force, than was absolutely necessary to effect this object, the plaintiff could not recover upon his count for an assault and battery.

But the court charged the jury, that, although the plaintiff was guilty of misrepresentation and fraud, in obtaining the stove, in the manner attempted to be proved by the defendants, yet this would not justify the defendants in forcibly taking the property from him ; that the property in the stove would not be changed by the purchase, and the defendants might take it peaceably, wherever they could find it ; but that the defendants, having delivered the stove to the plaintiff, could not justify taking it from him by blows inflicted upon his person, or by holding him, but should resort to redress by legal process ; and that, if they should find, that the property in the stove was not changed, for the reason stated, and that the defendants took it by violence, in the manner attempted to be shown by the plaintiff, although they used no more force than was necessary to accomplish

that object under the resistance of the plaintiff, they would still be liable in this action ; but the court, in that case, recommended to the jury to give small damages.

Verdict for plaintiff for one dollar damages. Exceptions by defendants.

*Poland* for defendants.

The plaintiff was guilty of obtaining the stove from the defendants by false pretences, and is liable, under chap. 95, sec. 15, of the Revised Statutes, to be punished by imprisonment. It has been decided in Massachusetts, (and was held by the county court in this case,) that no property passed to the plaintiff under this fraudulent contract, that his possession of the stove was tortious *ab initio*, and that the defendants, or their principal, could have maintained trover for the stove, without making a demand. Were the defendants, then, justified in their request to the court to instruct the jury, that they had the right to retake the stove from the plaintiff, in case he refused to surrender it to them, provided they used no more force than was absolutely necessary, to effect that object ? The doctrine is now well settled, that, if a man has a right of entry on land in the possession of another, he has a right to enter by force, if the person in possession endeavors to prevent him. *Richardson v. Anthony,* 12 Vt. 273. *Yale v. Seeley et al.,* 15 Vt. 221. *Hyatt v. Wood,* 4 Johns. 150. No adjudged case can be found, where a distinction betwen a right of entry and a right of recaption has been made the point of decision, and no distinction exists in the reason of the matter. When the defendants requested the plaintiff to give up the stove, it was his legal duty so to have done ; and when he resisted the attempt of the defendants to regain the possession of the stove, he became the first aggressor ; and if, in such affray, caused by his own illegal act, he was injured in any way in his person, it was the consequence of his own unlawful act, and gives him no action against the defendants.

*Skinner* for plaintiff.

Admitting that the title to the stove did not pass to the plaintiff, still the defendants had no right to retake it forcibly from the plaintiff, for the reason that the stove was in the plaintiff's possession by

Hodgeden v. Hubbard et al.

their consent. The general rule is, that a man cannot recapture his property, when such recaption must occasion violence, or endanger the peace of society. 3 Bl. Com. 4. 1 Sw. Dig. 464. 8 T. R. 78. 7 Cow. 752. In this case the plaintiff had obtained the possession of the stove; and if the title did not pass to him, the defendants could have brought trover, or case.

The opinion of the court was delivered by

WILLIAMS, Ch. J. It is admitted, in this case, that the property in the stove did not pass to the plaintiff, that, though the plaintiff obtained possession of the stove, yet it was by such means of falsehood and fraud, criminal in the eye of the law, as made the possession unlawful, and that, although the consent of the owner was apparently obtained to the delivery of the possession to the plaintiff, yet, as it respects the plaintiff, and so far as the right of property was concerned, no such consent was given. In the cases of *Buffington* v. *Gerrish*, 15 Mass. 156, and *Badger* v. *Phinney*, Ib. 359, it was decided, that, under similar circumstances, as between the owner and the person thus obtaining property, or between the owner and the existing creditors of such person, no property passed out of the real owner, and he might reclaim it, as against such person, or his creditors.

In the present case the defendants had clearly a right to retake the property, thus fraudulently obtained from them, if it could be done without unnecessary violence to the person, or without breach of the peace. It is admitted by the counsel for the plaintiff, that a right to re-capture existed in the defendants, if it could be done without violence, or breach of the peace. And how far this qualification of the right to retake property, thus taken, was intended for the security, or benefit, of the fraudulent possessor may admit of some doubt. Whoever is guilty of a breach of the peace, or of doing unnecessary violence to the person of another, although it may be in the assertion of an unquestioned and undoubted right, is liable to be prosecuted therefor. But the fraudulent possessor is not the protector of the public interest.

In the case before us it is stated, that it did not appear " how much force was used, or its character," before the defendants were assaulted by the plaintiff. To obtain possession of the property in

Hodgeden *v.* Hubbard et al.

question no violence to the person of the plaintiff was necessary, or required, unless from his resistance. It was not like property carried about the person, as a watch, or money, nor did it require a number of people to effect the object. The plaintiff had no lawful possession, nor any right to resist the attempt of the defendants to regain the property, of which he had unlawfully and fraudulently obtained the possession. By drawing his knife he became the aggressor, inasmuch as he had no right thus to protect his fraudulent attempt to acquire the stove, and the possession of the same, and it was the right of the defendants to hold him by force, and, if they made use of no unnecessary violence, they were justified; if they were guilty of more, they were liable.

Under the view of the evidence, as considered and claimed by the defendants, they were entitled to the charge requested. The refusal of the court so to charge was erroneous; and although the court stated to the jury correctly, that the defendants could not justify retaking the property by blows inflicted on the person of the plaintiff, yet this was not meeting the request; and the charge was evidently erroneous, when the jury were told, that the defendants would be liable, although they used no more force than was necessary to accomplish the object of retaking the property, under the resistance of the plaintiff. The resistance of the plaintiff was unlawful, in regard to the particular species of property, which was then the subject of controversy, under the facts claimed by the defendants, and which must have been found to the satisfaction of the jury, as would seem from their verdict.

On the second count in the declaration the plaintiff could have no claim whatever. The defendants were the agents of the true owner; the plaintiff was the wrong doer, and acquired no right, against the defendants, to either property, or possession, if the facts were as stated in the case.

The judgment of the county court is reversed.